958 F.2d 368
 139 L.R.R.M. (BNA) 2935
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED
STATES and CANADA, LOCAL UNION 521,
AFL-CIO, Respondent.
 No. 91-2526.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 5, 1992.
Decided March 12, 1992.
 
 On Application for Enforcement of an Order of the National Labor Relations Board.
 Argued Joan Elizabeth Hoyte, National Labor Relations Board, Washington, D.C., for petitioner.
 Raymond Lynn Hampton, II, Vital & Hampton, Barboursville, W.Va., for respondent.
 On Brief: Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Howard E. Perlstein, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for petitioner.
 N.L.R.B.
 ENFORCEMENT GRANTED.
 Before SPROUSE, WILKINSON and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The National Labor Relations Board applies for enforcement of its Order requiring Local 521 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, (the "Union") to cease and desist from making improper job referrals in violation of section 8(b)(1)(A) and (2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A) and (2), and to make whole members of the Union who lost earnings as a result of discriminatory job referrals. The Union opposes the application, claiming that there was not substantial evidence to sustain the findings of the administrative law judge and the Board. Enforcement is granted.
 
 
 2
 * The Union includes craftsmen skilled in the plumbing and pipefitting trade; its territory encompasses eight western counties of West Virginia. Pursuant to its collective bargaining contract with the Huntington Plumbing, Heating, and Cooling Contractors Association, the local Union since 1987 has maintained a hiring hall for meeting the work requirements of contractors subject to its collective bargaining agreement. According to its Hiring Hall Procedures, unemployed members sign an out-of-work list. Members are then referred for employment according to their position on the list, from top down, so that those members who have been unemployed the longest are referred first. After a member is referred to a job which lasts for ten days or more, his name is removed from the list. When the job is completed, he is then required to sign the list at the bottom. This procedure generally applies to all Union placements within the Union's territory except for placements as general foreman or steward; those positions are filled by the Union's business manager.
 
 
 3
 Joseph Bowden has been a member of the Union for approximately thirty years. He initiated these proceedings by charging that the Union's business manager and assistant business manager favored Union officers and their own relatives for favorable job placements, in violation of the Union's Hiring Hall Procedures. Bowden contends that he has been deprived of valuable work referrals as a result of this practice. The NLRB's Regional Director filed an administrative complaint against the Union on October 3, 1989. After an evidentiary hearing, an administrative law judge found that the Union's business managers had discriminated against Union members by recommending Union officers or relatives of the business managers for employment, despite the failure of these preferred members to register on the Union's out-of-work list. Accordingly, he recommended that the Union be ordered to cease the practice and to make its victims whole. The ALJ's findings and recommendations were substantially adopted by the Board.
 
 
 4
 The evidence at the hearing before the ALJ established that Paul Prince has been the Union's business manager since 1966. One of Prince's sons is a vice-president of the Union. Another is an executive board member. A third son is a member of the Union. Before 1966, the Union's business manager was Joe Frye. Joe Frye's son, Robert Frye, currently serves as the Union's assistant business manager. Two of Robert Frye's brothers are also officers of the Union.
 
 
 5
 Uncontraverted testimony at the hearing established that members of the Frye and Prince families, as well as other officers of the Union, were given preferred construction work, although their names were low on, or missing from, the out-of-work list.[1] Bowden testified that, while these members were favorably employed, his longest job within the Union's jurisdiction in 1989 lasted eighteen days and that he worked a total of only twenty-four days during 1989. He contends that he and other members would have received more favorable employment if the Hiring Hall Procedures had been properly followed. Bowden also testified that, despite his lengthy experience and skills, as well as the presence of his name on the list, Bowden had not been referred as a steward or general foreman during the three-year period preceding this action.
 
 
 6
 The Union generally concedes that the job referrals received by favored members did not result from a strict application of the Hiring Hall Procedures. It contends, however, that the Hiring Hall Procedures do not apply when employers request specific members by name, and that these members were properly referred because employers specifically requested them for jobs.
 
 
 7
 In support of this contention, the Union submitted numerous letters from contractors requesting members by name. The ALJ, however, noted that many of the letters were undated, contained boilerplate language, and had the names of members handwritten between typed text. Testimony at the hearing also indicated that the general foreman on a job, by agreement, a union member, would sometimes suggest to employers that they request particular union members. The ALJ therefore discredited the letters, concluding that they were merely pretextual. The ALJ also concluded that, even if the requests were legitimate, the Union had failed to demonstrate that it was permitted by its collective bargaining agreement and the Hiring Hall Procedures to fill positions by request, rather than by reference to the out-of-work list.
 
 
 8
 The Union also concedes that family members and Union officers sometimes received favorable positions as general foremen and stewards. It maintains however that the Union's Hiring Hall Procedures vested complete discretion in business manager Paul Prince to fill these positions. The ALJ disagreed with this interpretation of the Hiring Hall Procedure and concluded that it permitted the business manager to make placements only from names listed on the out-of-work list.
 
 II
 
 9
 The Union on appeal challenges the ALJ's findings that the Union had no authority to avoid the Hiring Hall Procedures and to refer members when they were specifically requested, and that the request letters were pretextual. It also argues that its business manager was acting within his authority in appointing stewards and general foremen without reference to the out-of-work list. We, of course, examine these arguments under the principles of labor law relating to hiring hall arrangements.
 
 
 10
 A Union has a fiduciary duty "not to conduct itself in an arbitrary, invidious, or discriminatory manner when representing those who seek to be referred out for employment by it." Boilermakers Local No. 374 v. NLRB, 852 F.2d 1353, 1358 (D.C.Cir.1988) (quoting Teamsters Local 519 (Rust Engineering), 276 N.L.R.B. 898, 908 (1985)). Furthermore,
 
 
 11
 Any departure from established exclusive hiring hall procedures which results in a denial ... falls within that class of discrimination which inherently encourages union membership, breaches the duty of fair representation owed to all hiring hall users, and violates Section 8(b)(1)(A) and (2) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(1)(A) & (2) (1982), unless the union demonstrates that its interference with employment was pursuant to a valid unionsecurity clause or was necessary to the effective performance of its representative function. Id. (citations and internal brackets omitted).
 
 
 12
 We agree with the Board that the Union failed to establish that there is a legitimate exception to the Hiring Hall Procedures when employers request members by name. Paul Prince testified that the practice of referring members by name began in 1987, at the same time the hiring hall was established. He conceded, however, that neither the collective bargaining agreement nor the Hiring Hall Procedures contain an exception for specific requests by employers.[2] In effect, the Union claims that this right to refer derives from a broad, unwritten exception to the Hiring Hall Procedures.
 
 
 13
 If the membership of the Union desires exceptions to the Hiring Hall Procedures, it might establish such an exception by a written amendment to the bylaws, Hiring Hall Procedures, or in its collective bargaining agreement. We conclude, however, that an unwritten exception such as that suggested by the Union is unlawful. See NLRB v. General Truckdrivers, Warehousemen and Helpers, 778 F.2d 207, 214 (5th Cir.1985) (when unwritten referral procedures supplant written hiring hall rules, operation of referral system becomes subjective, thereby violating section 8(b)(1)(A) of the National Labor Relations Act). We agree, therefore, with the ALJ that the Union's referral practice was improper.[3]
 
 
 14
 We are also unpersuaded by the Union's claim that the business manager has unfettered discretion to refer general foremen and stewards. The Hiring Hall Procedures state that "The Business Manager shall have the authority to select the general foreman and the steward for each job regardless of their position on the list." While this provision allows the business manager to fill these positions with members from any position on the list, it does not permit the referring officer to ignore the list by appointing members who have not signed it.
 
 
 15
 In view of the above, we affirm the Board's decision and order.
 
 
 16
 ENFORCEMENT GRANTED,
 
 
 
 [1]
 For example, Gary Prince, a son of Paul Prince, was referred to work on the construction of St. Mary's Hospital, although his signature was not on the out-of-work list. James Ferguson, President of the Union, only signed the list three times in 1988 and 1989, but was referred to numerous jobs during that time. Testimony also established that Paul Prince appointed members to the positions of general foreman and steward on various jobs, even though the nominated members had not signed the list
 
 
 [2]
 As far as the rights of employers to make specific requests are concerned, the Hiring Hall Procedures merely allow employers to "recall workers who have been discharged within thirty days."
 
 
 [3]
 In light of this conclusion, it is unnecessary for us to review the ALJ's finding that the employer requests were pretextual